UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

JASON GRAB                                            CIVIL ACTION

VERSUS                                               NO: 09-3439 C/W 09-
                                                    4128, 09-7387, 10-838

TRAYLOR BROS., INC, KIEWET                          SECTION: "S" (1)
SOUTHERN CO., & MASSMAN
CONSTRUCTION CO., a Joint
Venture, ET AL.

ORDER AND REASONS

IT IS HEREBY ORDERED that the Motion for Partial Summary Judgment regarding

seaman status filed by plaintiff Lary Scott Abshire, individually and on behalf of his minor child,

Kinley Lyric-Grace Abshire (Doc. #180), is **DENIED**.

IT IS FURTHER ORDERED that the Motion for Partial Summary Judgment regarding

Jacob Kinchen's seaman status filed by defendant Boh Bros. Construction Co., L.L.C. (Doc. #183)

is **DENIED**.

IT IS FURTHER ORDERED that the Motion for Partial Summary Judgment regarding

Abshire's seaman status filed by Boh Bros. (Doc. #185) is **DENIED**.

IT IS FURTHER ORDERED that the Motion for Partial Summary Judgment regarding

seaman status filed by plaintiffs Jacob Kinchen and Wendy Kinchen (Doc. #191) is **GRANTED**.

**IT IS FURTHER ORDERED** that Motion for Partial Summary Judgment on the Kinchens' 33 U.S.C. § 905(b) Claims filed by Boh Bros. (Doc. #188) is **DISMISSED.**

**IT IS FURTHER ORDERED** that Motion for Partial Summary Judgment on Abshire's 33 U.S.C. § 905(b) Claims filed by Boh Bros. (Doc. #189) is **DENIED AS PREMATURE.**[1]

## BACKGROUND

Defendants, Boh Brothers; Traylor Bros., Inc., Kiewet Southern Co., & Massman Construction Co., A Joint Venture (the "Joint Venture"); and Volkert & Associates, Inc. were involved in building the new I-10 twin span bridge over Lake Pontchartrain connecting New Orleans, Lousiana with Slidell, Louisiana.  On July 3, 2008, plaintiffs, Lary Abshire and Jacob Kinchen, iron workers, who were employed by Boh Bros. to work on the bridge, were injured when the crew boat in which they were traveling from the work site to shore at the end of the day hit a survey tower that was placed in Lake Pontchartrain by the Joint Venture.  At the time of the accident, Kinchen, who was not a licensed captain, was operating the boat from a seated position inside the cabin of the boat.  His vision was allegedly obstructed by two large tires that his Boh Bros. supervisor placed on the front of the push knees bow of the boat.

Abshire and Kinchen claim that they were seaman, and are entitled to recover damages under the Jones Act, 33 U.S.C. § 688, and the general maritime law.  They argue that they fit the definition

---

[1] Kinchen's and Abshire's § 905(b) claims become relevant if they are determined to be longshoremen rather than seamen.  Because the court finds that Kinchen is a seaman, his 905(b) claim and Boh Bros. motion regarding that claim (Doc. #188) are DISMISSED.  Because the court finds that there are disputed issues of material fact regarding Abshire's seaman status, Boh Bros.'s motions for partial summary judgment regarding Abshire's § 905(b) claims (Doc. #189) is denied as premature.

of seamen because they contributed to the work of the vessel, spent the majority of their time at work on a vessel, and their work was maritime in nature.

Kinchen was employed by Boh Bros. as an iron worker foreman.  He and his crew were responsible for placing the girders on the bridge.  They performed this work from a large crane barge, the BIG MAC, that served as their base of operations.  Kinchen's iron worker crew traveled to and from the BIG MAC via crew boat.  The BIG MAC was used to lift girders, materials, and crew members to construct the bridge.  As the foreman, Kinchen was responsible for directing the work performed by his crew, including positioning and movement of the crane barge, service and maintenance of the crane barge, direction of the crane operator, direction of the placement of the girders, caps, and work platforms.  Kinchen testified at his deposition that he spent about 95 percent of his time on the barge.

Abshire was an iron worker in Kinchen's crew.  The day of the accident was his first day on the job.  He testified at his deposition that he spent about 50 percent of his day on the BIG MAC working on the girder setting project.  Also, Kinchen testified that the job for which Abshire was hired typically required an employee to spend about 60 percent of his time on the barges, and the remaining 40 percent on the concrete piers setting girders.

Boh Bros. contends that Abshire and Kinchen were not seaman, but rather, are longshoremen.[2]  Boh Bros. argues that Abshire and Kinchen were iron workers who were responsible for placing girders on top of the bridge.  Boh Bros. contends that they were assigned to

---

[2] Boh Bros. has paid Abshire and Kinchen all damages that it contends are due under the Longshore and Harbor Workers' Compensation Act, 33 U.S.C. §901, et seq.

3

work on the bridge, not a specific vessel, and that any work they did on the vessel was more akin to traditional longshore or stevedoring work, rather than that of seamen.

Abshire and Kinchen filed motions for partial summary judgment in which they seek rulings that they were Jones Act seamen.  Boh Bros. filed cross motions, arguing that the court should find that Abshire and Kinchen are longshoremen.

## MOTIONS

### A.      Summary Judgment Standard

Summary judgment is proper when, viewing the evidence in the light most favorable to the non-movant, "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." Amburgey v. Corhart Refractories Corp., 936 F.2d 805, 809 (5th Cir. 1991); FED. R. CIV. PROC. 56(c).  If the moving party meets the initial burden of establishing that there is no genuine issue, the burden shifts to the non-moving party to produce evidence of the existence of a genuine issue for trial.  Celeotex Corp. v. Catrett, 106 S.Ct. 2548, 2552 (1986).  The non-movant cannot satisfy the summary judgment burden with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence.  Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc).  If the opposing party bears the burden of proof at trial, the moving party does not have to submit evidentiary documents to properly support its motion, but need only point out the absence of evidence supporting the essential elements of the opposing party's case. Saunders v. Michelin Tire Corp., 942 F.2d 299, 301 (5th Cir. 1991).

**B.      Seaman Status under the Jones Act**

The Jones Act provides a cause of action for a "seaman" who is injured in the course of his employment. 46 U.S.C. § 688(a).  Plaintiffs bear the burden of establishing seaman status. Becker v. Tidewater, Inc., 335 F.3d 376, 390 n. 8 (5th Cir.2003). The seaman inquiry "is a mixed question of law and fact," and deciding the issue via summary judgment will often be inappropriate.  Harbor Tug and Barge Co. v. Papai, 117 S.Ct. 1535, 1540 (1997). "Nevertheless, 'summary judgment ... is mandated where the facts and the law will reasonably support only one conclusion.'"  Id.

In Chandris, Inc. v. Latsis, 115 S.Ct. 2172, 2186 (1995), the Supreme Court of the United States recognized that the "the Jones Act inquiry is fundamentally status based: land-based maritime workers do not become seamen because they happen to be working on board a vessel when they are injured, and seamen do not lose Jones Act protection when the course of their service to a vessel takes them ashore."  The test established in Chandris for determining whether an employee is a seaman under the Jones Act is twofold: (1) the employee's duties must "contribute to the function of the vessel or to the accomplishment of its mission"; and (2) the employee "must have a connection to a vessel in navigation (or to an identifiable group of such vessels) that is substantial in terms of both its duration and its nature." Id. at 2189-90.

**1.      Contribution to the Function of the Vessel or to the Accomplishment of its Mission**

To show that he contributes to the function of the vessel or to the accomplishment of its mission, the plaintiff need only show that he "do[es] the ship's work." In re Endeavor Marine, Inc.,

5

234 F.3d 287, 290 (5th Cir. 2000).  In <u>Chandris</u>, 115 S.Ct. at 2184,  the Supreme Court of the United

States explained that:

> The Jones Act's protections, like the other admiralty protections for
> seamen, only extend to those maritime employees who do the ship's
> work.  But this threshold requirement is very broad: All who work at
> sea in the service of a ship are *eligible* for seamen status.

(emphasis original).

Abshire and Kinchen worked aboard the BIG MAC aiding in the vessel's mission of placing

girders on the bridge.  Therefore, they satisfy the first prong of the <u>Chandris</u> test.

**2.      Connection to a Vessel (or an Identifiable Group of Vessels) in Navigation that
is Substantial in Duration and Nature**

In <u>Chandris</u>, 115 S.Ct. at 2190, the Supreme Court of the United States explained that the

fundamental purpose of the requirement that a person have a connection to a vessel (or an

identifiable group of vessels) in navigation that is substantial in both duration and nature to be

considered a Jones Act seaman is:

> [T]o give full effect to the remedial scheme created by Congress and
> to separate the sea-based maritime employees who are entitled to
> Jones Act protection from those land-based workers who have only
> a transitory or sporadic connection to a vessel in navigation and
> therefore whose employment does not regularly expose them to the
> perils of the sea.
>
> This requirement therefore determines which maritime employees
> in [the] broad category of persons eligible for seaman status because
> they are "doing the ship's work" are in fact entitled to the benefits
> conferred upon seamen by the Jones Act because they have the
> requisite employment related connection to a vessel in navigation.

To determine whether a plaintiff's connection with a vessel (or an identifiable fleet of vessels) in navigation is substantial in nature and duration,

> the total circumstances of an individual's employment must be weighed to determine whether he had a sufficient relation to the navigation of vessels and the perils attendant thereon. The duration of a worker's connection to a vessel and the nature of the worker's activities, taken together, determine whether a maritime employee is a seaman because the ultimate inquiry is whether the worker in question is a member of the vessel's crew or simply a land-based employee who happens to be working on the vessel at a given time.

Id. at 2190-91 (citations omitted).

### a.    Vessel or Identifiable Fleet of Vessels

To be a Jones Act seaman, a plaintiff must have a connection with a vessel or an identifiable fleet of vessels. Id. at 2190. If the plaintiff asserts a connection to an identifiable fleet of vessels, the vessels must be under common ownership or control. Braniff v. Jackson Avenue-Gretna Ferry, Inc., 280 F.2d 523, 528 (5th Cir. 1960).

Abshire and Kinchen contend that they have a connection to the BIG MAC because their iron worker crew performed their duties on the bridge project from the vessel every day. Boh Bros. does not contest that the BIG MAC is a vessel, or that plaintiffs worked on that vessel. Further, it is undisputed that the BIG MAC was in navigation. Therefore, plaintiffs have identified a vessel to which they contend they have a substantial connection in both duration and nature.

### b.    Duration

In determining whether and employee has a substantial connection to a vessel or a fleet of vessels in navigation, Chandris, 115 S.Ct. at 2191, adopted the position taken by the United States

Court of Appeals for the Fifth Circuit that "[a] worker who spends less then about 30 percent of his

time in the service of a vessel in navigation should not qualify as a seaman under the Jones Act."

However, the Court explained that the 30 percent rule of thumb:

> serves as no more than a guideline established by yeas of experience,
> and departure from it will certainly be justified in appropriate cases.
> As we have said, "[t]he inquiry into seaman status is of necessity fact
> specific; it will depend on the nature of the vessel and the employee's
> precise relation to it."

(quoting McDermott Int'l, Inc. v. Wilander, 111 S.Ct. 807, 818 (1991)).

Additionally, the Chandris Court addressed an exception to the thirty percent rule:

> [W]e see no reason to limit the seaman status inquiry . . . exclusively
> to an examination of the overall course of a worker's service with a
> particular employer.  When a maritime worker's basic assignment
> changes, his seaman status may change as well.  For example, we can
> imagine situations in which someone who had worked for years in an
> employer's shoreside headquarters is then reassigned to a ship in a
> classic seaman's job that involves a regular and continuous, rather
> than intermittent, commitment of the worker's labor to the function
> of a vessel.  Such a person should not be denied seaman status if
> injured shortly after the reassignment, just as someone actually
> transferred to a desk job in the company's office and injured in the
> hallway should not be entitled to claim seaman status on the basis of
> prior service at sea.  If a maritime employee receives a new work
> assignment in which his essential duties are changed, he is entitled to
> have the assessment of the substantiality of his vessel-related work
> made on the basis of his activity in his new position.

Id. at 2191-92 (internal citations omitted).

However, the Untied States Court of Appeals for the Fifth Circuit has explained that for a

reassignment to confer seaman status, the plaintiff must prove: (1) that when he was assigned to a

vessel, he "was removed from his former position" and "assigned to a new, sea-based position;" (2)

that "this reassignment permanently changed his status;" and, (3) that "by serving in this new position, plaintiff would spend at least 30% of his time aboard a vessel." <u>Becker</u>, 335 F.3d at 390.

Kinchen testified that he spent approximately 95 percent of his workday aboard the BIG MAC, and the other 5 percent on the bridge structure. The crane operator assigned to the BIG MAC, James Ellison, also testified at his deposition that Kinchen spent 95 percent of his workday aboard the BIG MAC. Further, Boh Bros.'s iron worker superintendent on the twin span bridge project, Joe Martin, testified at his deposition that he observed the job all day every day, and that Kinchen spent 60 to 70 percent of his day on the bridge setting girders and caps. However, Boh Bros.'s project superintendent on the bridge job, William Moulton, testified at his deposition that, based on his knowledge about the type of work that Kinchen's crew was performing, that Kinchen would spend 80 percent of his time on work platforms, if the crew were setting work platforms. Moulton, spent only about 3 or 4 hours per week observing Kinchen's work, and his testimony is based on speculation regarding what Kinchen's crew might have been doing. Therefore, his testimony regarding the amount of time Kinchen spent on the bridge is speculative, and not credible.

Martin's testimony that Kinchen spent 60 to 70 percent of his workday on the bridge establishes that Kinchen spent at least 30 percent of his workday on the vessel. Thus, he meets the duration requirement of the <u>Chandris</u> test.

Abshire testified that he spent 50 percent of his first and only day working for Boh Bros. working on the barge. Abshire claims that he would have been employed by Boh Bros. as an iron worker working from the BIG MAC setting girders for 7 months. Abshire contends, based on Kinchen's testimony regarding the job duties of another member of the iron worker crew, Jason

Grab, that the job for which he was hired would have required him to spend 60 percent of his time on the barge.  Boh Bros. argues that Abshire does not meet the duration requirement. Abshire's job would have been substantially similar to Grab's.  Grab testified at his deposition that he spent more than 90 percent of his workday on the bridge structure.  In another place in his deposition, Grab testified that he spent more than 70 percent of his day on the bridge structure.  Further, Grab testified that Abshire would have been doing the same.

This testimony demonstrates that there is a disputed issue of material fact regarding how much time Abshire would have spent on the BIG MAC.  Kinchen, Abshire's foreman, said that Abshire would have spent 60 percent of his time on the barge.  However, Grab who did the same job as Abshire, testified that Abshire would have spent more than 70 percent of his time on the bridge structure.  Therefore, there are disputed issues of material fact that preclude summary judgment regarding whether Abshire meets the <u>Chandris</u> duration test.

### c.   Nature

The <u>Chandris</u> Court stressed that the seaman inquiry is a "status-based standard." 115 S.Ct. at 2185.  "[I]t is not the employee's particular job that is determinative, but the employee's connection to a vessel." <u>Id.</u> at 2188.  Indeed, in <u>In re Endeavor Marine, Inc.</u>, 234 F.3d at 292, the United States Court of Appeals for the Fifth Circuit held that a crane operator who was permanently assigned to a cargo vessel in the Mississippi River was a Jones Act seaman where the vessel's primary purpose was loading cargo, and the worker was regularly exposed to the perils of the sea.

Boh Bros. argues that Kinchen and Abshire did not have a substantial connection to the BIG MAC in nature because they were iron workers assigned to build a bridge, and that the vessel was

a tool they used to perform this work.  Boh Bros. also points out that plaintiffs were not assigned

to the vessel and would not have moved with the vessel if she were sent to a different construction

project.  Boh Bros. argues that Abshire's and Kinchen's work was similar to traditional longshore

or stevedoring work because they offloaded the girders.

Abshire and Kinchen argue that the totality of their work circumstances demonstrate that

they have a connection to the BIG MAC that is substantial in nature.  They contend that the BIG

MAC's mission was to set girders on the bridge, which was the work that they performed from the

vessel.  They also argue that the BIG MAC did not have a crew of deckhands and that they

performed traditional deckhand tasks such as aiding in moving the vessel.  Plaintiffs contend that

they were exposed to the perils of the sea every day.

Although plaintiffs' work on the BIG MAC consisted of offloading cargo, Boh Bros.

assessment that they engaged in traditional longshore work is not dispositive of seaman status.  See

Chandris, 115 S.Ct. at 2185.  Plaintiffs have demonstrated that they were exposed to the perils of

the sea because they worked aboard the BIG MAC in Lake Pontchartrain every day. Also, plaintiffs

were assigned to set girders on the bridge working from the BIG MAC for an extended period of

time until the job was complete.  Plaintiffs have presented deposition testimony that establishes that

they were transported to the BIG MAC by a crew boat every day and that the barge was their base

of operations.  The iron worker crew would have a safety meeting on the barge and then work

together use the crane to lift the girders into place.  This work required some iron workers to be on

the barges to connect the spreader beam to the girders and to direct the movement of the girder.

Martin testified that the iron workers' jobs are interchangeable. Considering the "total

circumstances" of the plaintiffs' employment, they had a substantial connection to the BIG MAC in nature, and meet this portion of the <u>Chandris</u> test.

## CONCLUSION

**IT IS HEREBY ORDERED** that the Motion for Partial Summary Judgment regarding seaman status filed by Abshire (Doc. #180) is **DENIED**.

**IT IS FURTHER ORDERED** that the Motion for Partial Summary Judgment regarding Kinchen's seaman status filed by Boh Bros. (Doc. #183) is **DENIED**.

**IT IS FURTHER ORDERED** that the Motion for Partial Summary Judgment regarding Abshire's seaman status filed by Boh Bros. (Doc. #185) is **DENIED**.

**IT IS FURTHER ORDERED** that the Motion for Partial Summary Judgment regarding seaman status filed by the Kinchens (Doc. #191) is **GRANTED**.

**IT IS FURTHER ORDERED** that Motion for Partial Summary Judgment on the Kinchens' 33 U.S.C. § 905(b) Claims filed by Boh Bros. (Doc. #188) is **DISMISSED.**

**IT IS FURTHER ORDERED** that Motion for Partial Summary Judgment on Abshire's 33 U.S.C. § 905(b) Claims filed by Boh Bros. (Doc. #189) is **DENIED AS PREMATURE.**

New Orleans, Louisiana, this __15th__ day of March, 2011.

**MARY ANN VIAL LEMMON**
**UNITED STATES DISTRICT JUDGE**